UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DERRICK GARRETT,

                 Plaintiff,

     v.

BRENT D. NOSTRANT, *Lackawanna Police Officer*, MARCUS D. RIVERS, *Lackawanna Police Officer*, and POLICE OFFICER(S) JOHN DOE(S),

                 Defendants

**DECISION AND ORDER**

1:23-CV-00377 EAW

---

## INTRODUCTION

Plaintiff Derrick Garrett ("Plaintiff") has sued defendants Lackawanna Police Officer Brent F. Nostrant ("Officer Nostrant") and Lackawanna Police Officer Marcus D. Rivers ("Officer Rivers") (collectively "Defendants") for having allegedly entered and searched his home without authority or probable cause, and restraining and injuring him in the process.  (Dkt. 1-1).  Presently before the Court is Defendants' motion for summary judgment.  (Dkt. 32).  For the following reasons, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following background is taken from Defendants' Statement of Undisputed Facts (Dkt. 32-13), Plaintiff's Statement of Undisputed Facts (Dkt. 35-6), and the exhibits attached to their papers.

On January 27, 2022, Plaintiff's pregnant girlfriend, Emily Emel-Warnica ("Ms. Emel-Warnica"), called her mother and asked to be picked up from Plaintiff's apartment.

- 1 -

(Dkt. 32-13 at ¶ 10; Dkt. 35-6 at ¶ 10).  According to Defendants, Ms. Emel-Warnica told her mother that Plaintiff became belligerent and threw eggs on her face, gifts for their child at her, and other objects, and that she feared for her safety and wanted to leave.  (Dkt. 32-13 at ¶ 11; *see also* Dkt. 33 at ¶ 3 (declaration of Ms. Emel-Warnica)).  Ms. Emel-Warnica's mother arrived and parked outside the apartment, but Plaintiff would not let Ms. Emel-Warnica leave.  (Dkt. 32-13 at ¶ 12; Dkt. 33 at ¶ 4).  While Plaintiff disputes that there was a domestic incident on the night in question, he does not dispute that he would not let Ms. Emel-Warnica leave the apartment.  (*See* Dkt. 35-6 at ¶ 12).  Ms. Emel-Warnica's mother called the Lackawanna Police Department (the "LPD") and reported that Ms. Emel-Warnica wanted to leave the apartment, but she could not because she was involved in a domestic dispute with Plaintiff.  (Dkt. 32-13 at ¶ 13; *see also* Dkt. 33 at ¶ 5).

Defendants responded to the dispatch call.  (Dkt. 32-13 at ¶¶ 1, 14; Dkt. 35-6 at ¶¶ 1, 14).  They were told that Ms. Emel-Warnica's mother was parked outside Plaintiff's apartment, that she requested help, and reported that Ms. Emel-Warnica wanted to leave the apartment, but could not because Plaintiff would not let her leave.  (Dkt. 32-13 at ¶ 15; Dkt. 35-6 at ¶ 15).  Officer Rivers arrived on scene first.  (Dkt. 32-13 at ¶ 16; Dkt. 35-6 at ¶ 16).

According to Defendants, Officer Rivers found the door to Plaintiff's apartment wide open and observed yelling and arguing between Plaintiff and Ms. Emel-Warnica.  (Dkt. 32-13 at ¶ 17).  Plaintiff was irate, yelling, screaming, cursing, and pacing back and forth towards Ms. Emel-Warnica.  (*Id*. at ¶ 18).  Officer Nostrant arrived shortly after Officer Rivers arrived, and since the door was open, both officers could see Plaintiff

blocking the doorway and refusing to let Ms. Emel-Warnica leave. (Dkt. 32-13 at ¶¶ 20-21; Dkt. 33 at ¶ 6 (Ms. Emel-Warnica's declaration, stating that when the officers arrived, the front door was open, and the officers could see Plaintiff blocking the doorway and refusing to let her leave)). However, according to Plaintiff, there was no argument or altercation on the day in question, he was playing video games alone in his room when the officers arrived, and his front door was closed. (Dkt. 35-6 at ¶ 17).

According to Defendants, Plaintiff observed them in the hallway of the apartment, and he screamed at them to leave and attempted to close the door. (Dkt. 32-13 at ¶ 22). Defendants directed Plaintiff to let Ms. Emel-Warnica leave the apartment, but Plaintiff refused to comply with these requests. (Dkt. 32-13 at ¶ 23; Dkt. 33 at ¶ 7). Officer Rivers placed his foot on the door to stop Plaintiff from closing it because in his experience a verbal domestic disturbance can escalate to a physical disturbance. (Dkt. 32-13 at ¶ 24). Defendants directed Plaintiff to step back, but Plaintiff began poking, touching, and pushing Officer Rivers' chest multiple times. (*Id*. at ¶ 25). Plaintiff abruptly walked away to a back room and out of sight of Defendants. (*Id*. at ¶ 26).

Due to Plaintiff's irate and erratic behavior, and because Defendants feared for their safety and for Ms. Emel-Warnica's safety since they could no longer see Plaintiff, Defendants entered the apartment. (Dkt. 32-13 at ¶¶ 27-28; *see also* Dkt. 32-3 at 7-10 (Officer Rivers' deposition testimony that he entered the apartment for safety reasons, since Plaintiff was aggressive and had "stormed off to the back," and Defendants did not know what Plaintiff had back in his room); Dkt. 32-4 at 5-6 (Officer Nostrant's deposition testimony that Defendants entered the apartment due to Plaintiff's irate and aggressive

behavior, and they wanted for their safety to "see what [Plaintiff] was doing," and to make sure he was not going to grab a weapon)). Defendants waited for Ms. Emel-Warnica to pack her belongings. (Dkt. 32-13 at ¶¶ 27-28; Dkt. 33 at ¶ 8 (Defendants were in the apartment as Ms. Emel-Warnica was gathering her belongings)). Officer Rivers stood in an area between Plaintiff and Ms. Emel-Warnica, and he asked her to act quickly and grab what she could. (Dkt. 32-13 at ¶ 29). During this time, Plaintiff was in the kitchen, drunk, yelling, and cursing at Defendants, and he continued to act in an out-of-control manner. (Dkt. 32-13 at ¶ 30; Dkt. 33 at ¶ 9). Ms. Emel-Warnica could hear Plaintiff and Defendants in the kitchen, and Plaintiff was not complying with Defendants' instructions. (Dkt. 32-13 at ¶ 31; Dkt. 33 at ¶ 10).

According to Defendants, Plaintiff ran aggressively towards Officer Rivers and pushed him. (Dkt. 32-13 at ¶ 32; *see also* Dkt. 32-3 at 12 (Officer Rivers' testimony that Plaintiff ran at him, and attacked him); Dkt. 32-4 at 8-9 (Officer Nostrant's testimony that Plaintiff "shov[ed] Officer Rivers")). Ms. Emel-Warnica saw Plaintiff trip and stumble over a dog cage in the kitchen. (Dkt. 32-13 at ¶ 33; Dkt. 33 at ¶ 11). According to Defendants, after Plaintiff got up, he continued to yell, scream, and refused to comply with instructions, and he was advised that he was being placed under arrest. (Dkt. 32-13 at ¶ 34). When Plaintiff refused to comply with commands, attempted to leave the apartment, and resisted handcuffing, Officer Rivers brought Plaintiff to the ground. (*Id*. at ¶ 35). Plaintiff continued to resist Defendants, including by placing his hands under his body to avoid being handcuffed. (*Id*. at ¶ 36). Defendants each took Plaintiff's arm and put them behind his back to arrest him. (*Id*. at ¶ 37).

Ms. Emel-Warnica left the apartment with her mother after Plaintiff was arrested. (Dkt. 33 at ¶ 12). She did not, at any point, hear or see Defendants kick, push, shove, or otherwise injure Plaintiff. (Dkt. 32-13 at ¶ 38; Dkt. 33 at ¶ 13). When Ms. Emel-Warnica went back to the apartment following the incident, she observed a switch blade on the floor. (Dkt. 32-13 at ¶ 39; Dkt. 33 at ¶ 15).

According to Plaintiff, he did not have an altercation with Ms. Emel-Warnica on the night in question, and in his Statement of Undisputed Facts, he states that his own "description" of what occurred that evening does not match the account provided by Defendants. (Dkt. 35-6 at ¶¶ 18-38). He does not specifically dispute that he failed to comply with Defendants' directions. (*See id*. at ¶¶ 23, 25, 31, 34). Plaintiff states that Defendants, without permission or cause, entered Plaintiff's residence without a warrant, refused to leave when instructed to do so by Plaintiff, and responded that "they could do whatever they want" before taking Plaintiff to the ground, kicking, punching, and kneeing him. (*Id*. at 6, Plaintiff's Facts in Dispute, ¶ 2).

As a result of the events that occurred on January 27, 2022, Plaintiff was charged with resisting arrest, obstructing governmental administration in the second degree, and harassment in the second degree (hereinafter, "the January 27 charges"). (Dkt. 32-13 at ¶ 40; *see also* Dkt. 33-1 at ¶ 4 (declaration of Lauren Nash, Erie County Deputy District Attorney)). Plaintiff was arraigned in Lackawanna City Court and represented by Nicholas Texido, Esq. (Dkt. 33-1 at ¶ 4). Nine months later, on October 29, 2022, Plaintiff was arrested and charged with aggravated felony DWI, felony DWI, and an open container in a motor vehicle (hereinafter, the "DWI charge"). (Dkt. 32-13 at ¶ 41; Dkt. 35-6 at ¶ 41;

*see also* Dkt. 33-1 at ¶ 5).   Plaintiff was arraigned in Lackawanna City Court and represented by David Sarkovics, Esq.   (Dkt. 33-1 at ¶ 5).

On May 10, 2023, Plaintiff pleaded guilty to the DWI charge and entered the Interim Probation Program.   (Dkt. 32-13 at ¶ 42; Dkt. 33-1 at ¶ 6).   Under the Interim Probation Program, Plaintiff originally pled guilty to feloniously aggravated DWI.   (Dkt. 32-13 at ¶ 43; Dkt. 33-1 at ¶ 6).   Upon completion of the Interim Probation Program, Plaintiff was permitted to withdraw his previous plea to feloniously aggravated DWI, and instead pled guilty to one count of violating VTL § 1192(3).   (Dkt. 32-13 at ¶ 44; Dkt. 33-1 at ¶ 6).   According to Defendants, the January 27 charges were included as part of Plaintiff's original plea agreement.   (Dkt. 32-13 at ¶ 45; *see also* Dkt. 33 at ¶ 7).

According to Plaintiff, his plea was only related to the DWI charge, and he did not enter a plea in contemplation of any other case.   (Dkt. 35-6 at ¶¶ 42, 45; *see also* Dkt. 35-8 at ¶¶ 2, 4 (declaration of David Sarkovics, Esq., stating that on May 10, 2023, Plaintiff entered a plea of guilty to feloniously aggravated DWI, allowing him the opportunity to complete the DWI Court and the Interim Probation Program, but that he understood Plaintiff to have another pending matter concerning an arrest on January 27, 2022)).   Plaintiff also submits the declaration of Nicholas Texido, Esq., who states that while Plaintiff was initially charged with harassment, resisting arrest, and obstruction of government administration, the harassment charges were dismissed following his arraignment.   (Dkt. 35-7 at ¶¶ 2-3).   Attorney Texido states that at court appearances, he advocated Plaintiff's position that the charges at issue were maliciously and falsely filed after Plaintiff objected to the officers entering his residence.   (*Id.* at ¶ 4).   Attorney Texido

was eventually informed that the remaining charges at issue (resisting arrest and obstructing governmental administration) were dismissed. (*Id*. at ¶ 5).

According to Defendants, none of Plaintiff's medical records reflect that he sustained injuries from being kicked, punched, or otherwise hit. (Dkt. 32-13 at ¶ 48). The only time Plaintiff received medical treatment was six months after the incident, and that record reflects that he complained about a cut to his left ring finger, which he told the provider had healed. (*Id*. at ¶ 51). Plaintiff testified that he attempted to visit Mercy Hospital on the day of his release due to his finger, but he left and went home because the hospital took too long to see him. (Dkt. 35-6 at ¶ 50; *see also* Dkt. 35-2 at 37-38). Plaintiff testified that he went to WellNow weeks following his arrest, at which time he complained of pain in his left finger, as well as an "injury to . . . [his] whole left arm and shoulder." (Dkt. 35-2 at 43-44). Plaintiff does not dispute that no medical records exist reflecting that Defendants punched or kicked him. (Dkt. 35-6 at ¶¶ 48-49).

Neither Plaintiff nor Defendants know how Plaintiff sustained the cut to his left ring finger, but Plaintiff noticed it was bleeding when he was placed in the police vehicle. (Dkt. 32-13 at ¶¶ 53-54; Dkt. 35-2 at 38 (Plaintiff's deposition testimony that he was not sure how he injured his finger but that it happened from the police officers)). Ms. Emel-Warnica states that Plaintiff told her that he obtained a cut on his finger on the night he was arrested. (Dkt. 33 at ¶ 14).

## PROCEDURAL HISTORY

Plaintiff commenced the current action on March 2, 2023, in Erie County Supreme Court, against the City of Lackawanna ("the City"), the LPD, Officer Nostrant, and Officer

Rivers. (Dkt. 1 at ¶ 1; Dkt. 1-1). Plaintiff asserted the following claims: (1) common law false arrest; (2) false arrest under 42 U.S.C. § 1983; (3) common law false imprisonment; (4) false imprisonment under § 1983; (5) illegal search under § 1983; (6) "unlawful deprivation of property" based on negligence; (7) battery; (8) negligent hiring, training, and supervision against the City and the LPD; and (9) private nuisance and trespass. (Dkt. 1-1 at ¶¶ 10-47). On May 1, 2023, Defendants filed a Notice of Removal, removing the case to the United States District Court of the Western District of New York, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Defendants answered the complaint (Dkt. 4), and the case was referred to the Hon. H. Kenneth Schroder Jr., United States Magistrate Judge, for supervision of discovery and related pretrial matters (Dkt. 5).

Defendants filed a motion for judgment on the pleadings on November 10, 2023, and Plaintiff filed a cross-motion for leave to amend on December 4, 2023. (Dkt. 14; Dkt. 18). On July 31, 2024, the Court granted the motion for judgment on the pleadings in part, and denied Plaintiff's cross-motion for leave to amend. (Dkt. 25). Specifically, the Court granted Defendants' motion for judgment on the pleadings to the extent that it dismissed the claims against the City, the LPD, and the individual defendants in their official capacities, and it also dismissed Plaintiff's claims for unlawful deprivation of property and private nuisance against Officer Nostrant and Officer Rivers in their individual capacities. (*Id*.). The Court denied the motion for judgment on the pleadings as to the remaining claims against Officer Nostrant and Officer Rivers in their individual capacities. (*Id*.).

Thereafter, on April 11, 2025, Defendants filed a motion for summary judgment. (Dkt. 32). Plaintiff filed a response in opposition to Defendants' motion on May 16, 2025

(Dkt. 35), and Defendants filed reply papers in further support of their motion on May 30, 2025 (Dkt. 36).

## DISCUSSION

## I.    Legal Standards

### A.    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not

- 9 -

rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concerta Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation modified).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.    Section 1983

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  A plaintiff "must demonstrate that the challenged conduct was 'committed by a person acting under color of state law,' and 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 268-69 (W.D.N.Y. 2016) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  But a plaintiff cannot rely on a *respondeat superior* theory of liability, *see Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), and "must directly plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

## II.    <u>Analysis</u>

### A. **Plaintiff's Guilty Plea**

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest, false imprisonment, and unlawful search claims because Plaintiff's guilty plea is presumptive proof of probable cause barring these claims.    (Dkt. 32-12 at 12-16). Specifically, Defendants argue that the January 27 charges were covered by the plea agreement for the DWI charge.    (*Id*. at 12).    In response, Plaintiff argues that his guilty plea to the DWI charge did not include the January 27 charges, and the prosecution on its own elected not to pursue the January 27 charges.    (Dkt. 35 at 10-12).

It is well-settled that probable cause is a complete defense to a claim for false arrest, false imprisonment, or an unlawful search.    *Davis v. City of N.Y.*, 840 F. App'x 631, 633 (2d Cir. 2021); *see also Conti v. Comito*, No. 2:21-CV-158 (RPK) (AYS), 2022 WL 4485155, at *2-3 (E.D.N.Y. Sept. 27, 2022); *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 346 (W.D.N.Y. 2005).    And a guilty plea and conviction of the charge arising from the alleged false arrest, imprisonment, or search is "conclusive proof of probable cause." *Conti*, 2022 WL 4485155, at *2-3.    This remains true even when a defendant pleads guilty to one charge in satisfaction of charges stemming from multiple arrests.    *See, e.g., Horvath v. City of N.Y.*, No. 12 CV 6005(RJD)(JMA), 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015) (rejecting the plaintiff's argument that "because he only pled guilty to one charge of disorderly conduct, his guilty plea does not bar false arrest claims for both arrests," and explaining that the plaintiff's "guilty plea to disorderly conduct conclusively established probable cause for *both* of his arrests, and therefore his claims for false arrest under federal

and state law are dismissed."); *Lluberes v. City of Troy*, No. 11-CV-1346 (CFH), 2014 WL 1123413, at *15 (N.D.N.Y. Mar. 21, 2024) ("It is undisputed that Lluberes pled guilty to one count of disorderly conduct in full satisfaction of the charges that stemmed from arrests on August 29, 2010 and May 8, 2011. Lluberes cannot challenge the validity of his two arrests without vacation of his guilty plea." (citation omitted)).

Defendants previously raised this argument in connection with their motion for judgment on the pleadings. (*See, e.g.*, Dkt. 25 at 14-15). The Court disagreed with Defendants because the evidence submitted—a transcript from Plaintiff's May 10, 2023 guilty plea to the DWI charges—was inadequate. Specifically, the Court reasoned that "[n]othing in the transcript establishe[d] that the referenced 'pending matter in the city of . . . Lackawanna' involved the conduct at issue in this lawsuit," nor did "the transcript establish that 'the charges at issue are covered by a plea agreement' . . . as Defendants have argued." (*Id.* at 15; *see also* Dkt. 14-3 (May 10, 2023 plea hearing transcript)).

In support of their renewed argument that Plaintiff's guilty plea to the DWI charge was made in satisfaction of the January 27 charges, Defendants again rely on the transcript from the May 10, 2023 plea to the DWI charge, and they additionally submit (1) the transcript from a May 17, 2023 off-calendar proceeding in *People v. D. Garrett*, CR-00315-22, the case concerning the January 27 charges (Dkt. 32-5), and (2) a declaration from Deputy District Attorney Lauren Nash (Dkt. 33-1).

As previously noted by the Court, the transcript from the May 10, 2023 plea proceeding reflects that Plaintiff appeared before Supreme Court Justice William Boller, pled guilty to the DWI charge, and then following Plaintiff's plea to the DWI charge, the

assistant district attorney handling the proceeding stated: "Judge, for the record, Mr. Garrett had a pending matter in the city of Lackawanna, a misdemeanor, and this plea will cover that." (*See* Dkt. 14-3 at 10). The transcript does not reflect Plaintiff's agreement with this statement and Justice Boller did not acknowledge the statement. On the other hand, Plaintiff's attorney did not object to it.

One week following Plaintiff's guilty plea to the DWI charge, there was a proceeding before City Court Judge Kenneth A. Szyszkowski in *People v. D. Garrett*, CR-00315-22, which is the case stemming from the January 27, 2022 charges. Defendants have also submitted the transcript from this proceeding. (Dkt. 32-5). Plaintiff was not present at the proceeding, and the following was discussed on the record:

> MR. TRUNFIO: Yes, Your Honor. Alex Trunfio for the People. It is my understanding that the felony file has been indicted, the felony DWI for this defendant that is separate from this case. However, this—the plea on the felony file, that will occur post-indictment will completely cover this case, the misdemeanor case that are made in this Court in its entirety.
>
> THE COURT: Yes, all right. I've got correspondence from I believe your bureau chief, Lauren Nash, indicating and I'll read it directly from the correspondence: Please be advised that this case was covered in its entirety by defendant's plea of guilty in superior court under indictment number 7077-23/001. So noted. We had this scheduled for a status update on June 13th. That's no longer necessary because this file has been covered by the plea taken in superior court. Thank you, everybody.

(*Id*. at 3).

Finally, Defendants submit a declaration from Deputy DA Nash. Deputy DA Nash states that she "personally oversaw the Justice Court Bureau, which handled the criminal case The People of the State of New York v. Derrick Garret, Docket CR-00315-22 in the City of Lackawanna Court, as well as the second criminal case The People of the State of

<u>New York v. Derrick Garret</u>, Docket CR-04568-22 (EDCA Legacy No.: 02070-2022) in the City of Lackawanna Court.  (Dkt. 33-1 at ¶ 2).  Deputy DA Nash states, in relevant part:

> Also, included as part of Defendant's initial plea on Docket CR-04568-22 (EDCA Legacy No.: 02070-2022) were the charges from his January 27, 2022, arrest for Resisting Arrest, in violation of Penal Law § 250.30, Obstructing Governmental Administration in the Second Degree, in violation of Penal Law § 195.05, and Harassment 2nd Degree in violation of Penal Law § 240.26(1).  These charges were dismissed when they were included as part of the plea on Docket CR-04568-22 (ECDA Legacy No.: 02070-2022).  When a defendant has multiple cases, it is common practice, in the Erie County District Attorney's [Office] to resolve them with a global disposition plea package such as was done in this defendant's cases.

(*See* Dkt. 33-1 at ¶ 7).

Plaintiff argues in opposition that he entered a plea relative to the DWI charge only, that he never contemplated the plea as including the January 27 charges, and the fact that the state elected on its own, and after his guilty plea was entered, to have Plaintiff's guilty plea "cover" the January 27 charges, does not mean that it was agreed to by Plaintiff.  (Dkt. 35 at 11).  In support of this argument, Plaintiff relies on the transcript of the May 10, 2023 plea proceeding, at which time he pleaded guilty to the DWI charge only.  Plaintiff also submits a declaration from attorney Texido, providing that Plaintiff was initially charged with harassment, resisting arrest, and obstruction of government administration, and the harassment charges were dismissed following his arraignment; at court appearances, attorney Texido advocated Plaintiff's position that the charges at issue were maliciously and falsely filed after Plaintiff objected to the officers entering his residence; and that attorney Texido was eventually informed that the remaining charges at issue (resisting

arrest and obstructing governmental administration) were dismissed in their totality by the state.  (*See* Dkt. 35-7).

As the Court explained in connection with its ruling on Defendants' motion for judgment on the pleadings, the May 10, 2023 plea transcript, standing alone, is inadequate to establish the existence of probable cause as a matter of law, including because nothing in the transcript establishes that the referenced "pending matter in the city of . . . Lackawanna" involved the conduct at issue in this lawsuit.  (*See* Dkt. 25 at 15 (explaining that "it may be the case that Plaintiff entered into a plea agreement covering the charges arising out of the conduct at issue in this lawsuit," but on the record before it, the Court could not reach such a conclusion)).

The transcript from the May 17, 2023 docket call, wherein Judge Szyszkowski read correspondence from the District Attorney's Office that "this case was covered in its entirety by defendant's plea of guilty in superior court," provides some clarity.  Plaintiff was not present at the May 17 docket call, and there is nothing in the transcript demonstrating that Plaintiff contemplated pleading guilty to, or was aware that he had pleaded guilty to, the January 27 charges.  But the docket call does document that the state elected to have the guilty plea to the DWI charge "cover" the January 27 charges specifically, as opposed to charges stemming from some other criminal prosecution. Finally, as to the declaration by Deputy DA Nash, that declaration also makes clear that the state intended Plaintiff's plea to the DWI charges to cover the January 27 charges, and that the use of global disposition plea packages are a common practice in the Erie County DA's Office.

- 15 -

Plaintiff fails to submit his own declaration disputing that his plea to the DWI charge was made in satisfaction of the January 27 charges, but a review of his deposition transcript reveals that Plaintiff testified that the January 27 charges were not covered by any plea deals, and that the case was "dismissed on its own." (Dkt. 35-2 at 74). Plaintiff does not provide any documentary evidence substantiating his claim that the charges were dismissed, and the documents attached to attorney Texido's declaration include the charging documents only. (*See* Dkt. 35-7 at 3-7). Further, neither of the attorney declarations submitted by Plaintiff explicitly deny that Plaintiff's plea agreement was made in satisfaction of the January 27 charges.

Although the Court finds it to be a close call, given Plaintiff's sworn testimony at his deposition that his plea did not cover the January 27 charges, coupled with the lack of any evidence from Defendants confirming that Plaintiff's plea to the DWI charge was *knowingly made* in satisfaction of the January 27 charges (such as a signed plea agreement or the transcript of a plea proceeding wherein Plaintiff stated that he understood that his plea to the DWI charge was made in satisfaction of the January 27 charges), Defendants are not entitled to summary judgment on Plaintiff's false arrest, false imprisonment, and unlawful search claims, at least on this basis. Without some evidence that Plaintiff acknowledged that his plea to the DWI charge was made in satisfaction of the January 27 charges or other concrete proof that the plea to the DWI charge satisfied the charges related to the January 27 events, the Court cannot conclude that Plaintiff is barred from bringing the current claims based on a guilty plea.

### B. Plaintiff's Contradictory and Unsupported Version of Events is Insufficient to Raise a Genuine Issue of Material Fact

According to Defendants, they were dispatched to Plaintiff's apartment after Ms. Emel-Warnica's mother called 911 because her daughter was trying to leave Plaintiff's house, but Plaintiff was preventing her from doing so. When Defendants arrived at the house, the front door was open and Plaintiff was intoxicated, and Plaintiff was acting erratically, yelling at Ms. Emel-Warnica, and refusing to let her leave. Defendants entered the apartment when Plaintiff refused to comply with their orders and would not stay where they could see him. Ms. Emel-Warnica also confirmed that Plaintiff refused to comply with Defendants' instructions. Plaintiff ran at Defendants and resisted arrest, and Defendants were required to use force to effectuate the arrest, including by bringing Plaintiff to the ground.

Defendants have offered various proof supporting this version of events. Defendants submit the declaration submitted by Ms. Emel-Warnica, who confirmed: that Plaintiff was drinking on the night in question; that she and Plaintiff were involved in a domestic dispute, she feared for her safety, and Plaintiff would not permit her to leave; that she called her mother for help; that the door was open when Defendants arrived at Plaintiff's home, and Defendants observed Plaintiff blocking the doorway and not allowing her to leave; that Plaintiff refused to comply with Defendants' directions; and that Ms. Emel-Warnica did not hear or see Defendants kick, push, shove, or otherwise injure Plaintiff. (*See* Dkt. 33).

In addition, Defendants submit the declaration of John Maddigan, a patrolman with the LPD, who was working in the communications department, handled the 911 call from Ms. Emel-Warnica's mother regarding the domestic dispute on January 27, 2022, and relayed the information to Defendants. (Dkt. 32-11 at ¶¶ 4, 7 ("On January 27, 2022, I received a call from a mother reporting her pregnant daughter was trying to leave an apartment but was prevented from doing so because she was involved in a domestic dispute," and "I relayed this information to Officers Nostrant and Rivers," who were dispatched to 691 Ridge Road)). Defendants have submitted the audio recordings from the 911 call and the dispatch calls to Defendants, which the Court has reviewed. Defendants also submit their deposition transcripts, wherein they confirmed that they entered Plaintiff's apartment for safety reasons, and Plaintiff was arrested following his failure to comply with their orders and running at Officer Rivers. (Dkt. 32-3 & Dkt. 32-4).

In opposition, Plaintiff relies solely on his own deposition testimony. According to Plaintiff, on the evening of January 27, 2022, he was in his bedroom playing video games when he "heard the door get busted open." (Dkt. 35-2 at 21). Plaintiff testified that he was not drinking on that day, he did not argue with Ms. Emel-Warnica, and Ms. Emel-Warnica was in the living room folding clothes when the police entered his home. (*Id.*; *see also* Dkt. 35-6 at ¶ 17). After hearing his door "busted open," Plaintiff left his room and approached the kitchen, asked the officers why they were in his home, and told them to leave. (Dkt. 35-2 at 22-23). Plaintiff testified that the black officer stated, "there's sheeps and then there's wolves," that Defendants would not leave, and that they attacked him. (*Id.* at 24). Plaintiff testified that Defendants tossed him to the kitchen floor, and that he was

kicked, punched, and kneed in his back.  (*Id*. at 24-27).  Plaintiff testified that he was

arrested and that there was "blood everywhere."  (*Id*. at 14, 24-27).  Plaintiff testified that

Ms. Emel-Warnica was scared and crying.  (*Id*. at 25).  Plaintiff does not dispute that there

are no medical records supporting his account that he was tossed to the floor and punched

and kicked by Defendants.  (*See* Dkt. 35-6 at ¶¶ 48-49).

Plaintiff's version of events relies entirely on his own deposition testimony.  In fact,

he submits no affidavit or declaration.  And that deposition testimony is heavily

contradicted by other evidence before the Court.  In contrast, Plaintiff has offered no other

evidence substantiating his version of what occurred on January 27, 2022—nor can the

Court find any such evidence in the record.[1]

Plaintiff's self-serving statements, standing alone, are not sufficient to create an

issue of fact to defeat summary judgment.  *See, e.g., Beauvoir v. Falco*, 345 F. Supp. 3d

350, 368 (S.D.N.Y. 2018) (granting summary judgment in favor of Defendants where the

plaintiff's testimony was "uncorroborated by any evidence, and, apart from being self-

serving testimony that is insufficient to defeat summary judgment, it is belied by the video

evidence"), *appeal dismissed*, 2019 WL 2454279 (2d Cir. 2019); *see also Jeffreys v. City

of N.Y.*, 426 F.3d 549, 554-55 (2d Cir. 2005) (explaining that the "existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient" to defeat summary

---

[1]    The only evidence submitted by Plaintiff in opposition to Defendants' motion for
summary judgment is as follows: (1) Plaintiff's deposition testimony, dated October 22,
2024; (2) Officer Rivers' deposition testimony, dated October 22, 2024; (3) Officer
Nostrant's deposition testimony, dated October 22, 2024; and (4) a Use of Force Form.
(*See* Dkt. 35-1 at 2).

judgment, and concluding that granting summary judgment was appropriate, where the district court found nothing in the record supporting the plaintiff's allegations other than his own contradictory and incomplete testimony, and determined that no reasonable person could believe the plaintiff's testimony); *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) ("a nonmoving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment" (quotations, citations, and alteration omitted) (collecting cases)); *Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016) (same), *aff'd*, 739 F. App'x 72 (2d Cir. 2018).[2]

Other than Plaintiff's self-serving deposition testimony, there is no evidence in the record supporting that Defendants illegally entered Plaintiff's residence, that they illegally arrested him, or that they used excessive force in doing so. Not only is Plaintiff's testimony not supported, but it is heavily contradicted by other evidence in the record, including the declarations and audio recordings submitted by Defendants. Further, Plaintiff's deposition testimony is contradicted by his own prior statements.

---

[2]    To be clear, the Court does not conclude that a non-movant may never oppose summary judgment by submitting his or her testimony alone to create an issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A) (a party asserting that a fact is genuinely disputed must support that assertion by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). However, under the circumstances here—where Plaintiff's testimony is contradicted by all other evidence in the record—the Court concludes that it fails to create an issue of fact.

For example, at his deposition Plaintiff reported that he was not sure how he sustained his finger injury; however, a medical record submitted by Defendants, produced by Plaintiff as part of his supplemental interrogatory responses, reveals that Plaintiff told that provider that he was "jumped 2-3 month[s] ago," and was "stabbed in the 4th digit of his left hand." (*Compare* Dkt. 32-7 at 3 (record from WellNOW dated June 27, 2022), *with* Dkt. 35-2 at 38 (Plaintiff's deposition dated October 22, 2024)).[3]

Similarly, Plaintiff fails to dispute that he would not let Ms. Emel-Warnica leave on the night in question. (*See* Dkt. 35-6 at ¶ 12). Yet, at his deposition Plaintiff testified that he was in his room alone playing video games on the night in question and Ms. Emel-Warnica was folding clothes. (Dkt. 35-2 at 13). This makes no sense—that on the one hand, Plaintiff admittedly would not let his girlfriend leave, but on the other hand he was simply playing video games in his room while she folded clothes. Likewise, Plaintiff

---

[3]    There is evidence in the record that Plaintiff injured his left ring finger on January 27, 2022. For example, Ms. Emel-Warnica states that Plaintiff told her that he injured his finger on the night he was arrested, and when she went back to the apartment, she noticed there was a switch blade on the floor in the kitchen. (Dkt. 33 at ¶¶ 14-15). Plaintiff claims that he sought medical treatment for his finger after he was released, but he left and went home because the hospital took too long to see him. In opposition to Defendants' motion, Plaintiff submits no medical records supporting that he received any assessment or treatment for his finger, although the Court notes that Defendants submit records from WellNOW dated June 27, 2022, produced to them as part of Plaintiff's supplemental response to interrogatories, indicating that Plaintiff's finger injury was "superficial," "uncomplicated," and "stable." (*See* Dkt. 32-7 at 5). As explained above, Plaintiff concedes that there are no medical records supporting that Defendants punched or kicked him, and in fact Plaintiff states that he is not aware how he sustained the cut to his finger, only that he sustained it on the night of his arrest. Given this lack of evidence, and given the fact that a cut to the finger is not consistent with punching or kicking—which is what Plaintiff claims constituted the excessive force in this case—the Court does not find that Plaintiff's alleged finger injury creates an issue of fact with respect to the force used by Defendants.

attempts to dispute that the door to his apartment was open, yet at the same time he claims he was closeted away alone in his room playing video games.  (*See* Dkt. 35-6 at ¶ 17).  This is nonsensical and Plaintiff cannot have it both ways—to claim on the one hand he was in his room playing video games, but on the other claim to know whether the front door to his apartment was open.

Thus, for the reasons discussed further below, Defendants have established their entitlement to summary judgment and Plaintiff has failed to come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.

C.    **State Law Battery Claim**

Under New York law, "'[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'"  *5 Borough Pawn, LLC v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) (quoting *Sulkowska v. City of N.Y.,* 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001)).  "An arrest is lawful if made pursuant to a warrant or based upon probable cause."  *Stone v. Port Auth. of N.Y. and N.J.,* No. 11-CV-3932 (SMG), 2014 WL 3110002, at *6 (E.D.N.Y. July 8, 2014).  "A lawful arrest is not an assault or battery under New York law, provided the force used is reasonable." *Figueroa v. Mazza,* 825 F.3d 89, 105 n.13 (2d Cir. 2016).

"As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest." *Tianshu Li v. United States,* No. 05 Civ. 6237 (NRB), 2009 WL 3321014, at *1 n.2 (S.D.N.Y. Oct. 8, 2009) (citing *Posr v. Doherty,* 944 F.2d 91, 94-95 (2d Cir. 1991)).

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same." *Cabral v. City of N.Y.*, No. 12 Civ. 4659 (LGS), 2014 WL 4636433, at *10 (S.D.N.Y. Sept. 17, 2014) (quotation and citation omitted), *aff'd*, 662 F. App'x 11 (2d Cir. 2016). "That standard tasks courts with balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. According to the Supreme Court, that balancing test looks to the facts and circumstances of each particular case, especially (1) the severity of the crime at issue; (2) whether the arrestee poses an immediate threat to the officer or passersby; and (3) whether the arrestee is actively resisting arrest or attempting to evade arrest by flight." *Lee v. City of Troy*, 520 F. Supp. 3d 191, 207 (N.D.N.Y. 2021) (citations and quotations omitted).

The Court first considers Plaintiff's argument that his arrest constituted a battery because it was unlawful. The testimony by Officer Rivers and Officer Nostrant, the declarations by Ms. Emel-Warnica and Officer Maddigan, and the relevant audio recordings, support that Plaintiff refused to comply with Defendants' directions and would not allow Ms. Emel-Warnica to leave. Plaintiff does not offer any evidence specifically disputing that he failed to comply with Defendants' directions, including that he allow Ms. Emel-Warnica to leave the apartment. *See, e.g., Uzoukwu v. Krawiecki*, No. 10-CV-4960 (RA), 2016 WL 6561300, at *7 (S.D.N.Y. Nov. 4, 2016) ("An officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with a lawful order from a police officer."); *Akinnagbe v. City of N.Y.*, 128 F. Supp. 3d 539,

- 23 -

545 (E.D.N.Y 2015) (same); *see also Jaegly v. Couch*, 439 F.3d 149, 153-54 (2d Cir. 2006) ("a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause").

Plaintiff argues in opposition that Defendants were not lawfully in his apartment on the evening of January 27, 2022, and therefore his subsequent refusal to comply with Defendants' orders was not unlawful and they lacked probable cause to arrest him. (*See, e.g.*, Dkt. 35 at 13-14 (arguing that the "officers lacked a warrant or reason to believe a crime was being committed when they disregarded Plaintiff's rights and trespassed into Plaintiff's residence," and Plaintiff had a right to remove them from his apartment)). The Court disagrees. "[P]olice officers may enter a dwelling without a warrant to render . . . assistance to a person whom they reasonably believe to be in distress," which is "assessed in light of the particular circumstances confronting the officer at the time." *See, e.g., Kerman v. City of N.Y.*, 261 F.3d 229, 235 (2d Cir. 2001). As explained above, the evidence submitted by Defendants supports that they were dispatched to Plaintiff's residence for a domestic disturbance. When they arrived at the apartment, Defendants observed that the front door was open and Plaintiff was intoxicated, acting erratically, yelling at Ms. Emel-Warnica, and refusing to let her leave. Defendants entered the apartment when Plaintiff became belligerent with them, refused to comply with their orders, including by allowing Ms. Emel-Warnica to leave, and would not stay where they could see him. Under the circumstances, Defendants were permitted to enter Plaintiff's apartment, and his refusal to comply with their orders—including by impeding Ms. Emel-Warnica leaving the

apartment—was unlawful, and their subsequent arrest of Plaintiff did not constitute a battery.

As to Plaintiff's claim that he was battered by Defendants because they used excessive force in arresting him, Plaintiff has also failed to create an issue of fact precluding summary judgment. Defendants testified that because Plaintiff was resisting arrest, they brought him to the ground, and they each took Plaintiff's arm and put them behind his back to arrest him. (Dkt. 32-3 at 13-14 (Officer Rivers deposition transcript); Dkt. 32-4 at 10 (Officer Nostrant deposition transcript)).[4] Ms. Emel-Warnica has provided a declaration also confirming that she did not, at any point, hear or see Defendants kick, push, shove, or otherwise injure Plaintiff, but that Plaintiff was screaming at Defendants, acting in an "out-of-control manner," and failing to comply with their instructions. Finally, the lack of evidence (such as medical records) supporting any physical injury consistent with Defendants kicking or punching him—a fact Plaintiff does not dispute—supports that any force used to effectuate the arrest was reasonable, and no reasonable jury could find otherwise. *See Gutierrez v. New York*, No. 18-CV-3621 (MKB), 2021 WL 681238, at *15 (E.D.N.Y. Feb. 22, 2021) (granting summary judgment in the defendants' favor on excessive force claim, explaining that "tackling or shoving a plaintiff down to the ground

---

[4]    Defendants also submit the Police Report from Plaintiff's arrest on January 27, 2022, which reflects that Plaintiff attempted to remove Defendants from his apartment and resisted arrest. (Dkt. 32-9). The admissibility of this report is questionable, although Plaintiff also submits a similar LPD "Use of Force Report," which supports Defendants' version of events—namely, that Plaintiff became irate with Defendants, that he refused numerous commands, and resisted arrest, and therefore Defendants took Plaintiff to the ground where he was forcibly handcuffed. (*See* Dkt. 35-5).

can be an objectively reasonable response to a plaintiff resisting arrest."). In sum, the record before the Court supports that both the arrest itself and the force employed in effectuating the arrest was reasonable. For those reasons, Defendants are entitled to summary judgment on Plaintiff's battery claim.

### D.    Qualified Immunity

Defendants next argue that, even if they are not entitled to summary judgment on Plaintiff's claims, they are entitled to qualified immunity on any claim arising from their use of force against Plaintiff. (Dkt. 32-12 at 21-23). In response, Plaintiff argues that Defendants are not entitled to qualified immunity on the state and federal claims, since they have failed to provide any facts establishing that their actions were "objectively reasonable," they admit that a person has a right to privacy in their residence, and that if an arrest is unlawful, any use of force against a plaintiff is excessive and unreasonable. (Dkt. 35 at 17-19).

"Any claim for damages against officials in their individual capacities . . . implicates the doctrine of qualified immunity." *Tanvir v. Tanzin*, 120 F.4th 1049, 1059 (2d Cir. 2024) (citation modified). "That doctrine 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *see Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (explaining that "[q]ualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (citation modified)).

"In deciding whether an official is entitled to qualified immunity, [a court] conducts a two-pronged inquiry, asking whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 116 (2d Cir. 2024) (citation modified). "The Supreme Court has left it up to courts to decide the order in which to approach those questions." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Ultimately, however, "qualified immunity is defeated only if *both* requirements are met." *Nat'l Rifle Assoc. of Am. v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025). Further, qualified immunity shields officers from liability under § 1983 for claims of unlawful search and arrest so long as "arguable probable cause" existed. *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). Arguable probable cause exists if either "it was objectively reasonable for the officer to believe that probable cause existed," or "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

Even if Defendants were not entitled to summary judgment on Plaintiff's battery claim, the Court finds that Defendants would be shielded by qualified immunity. For the same reasons, the Court finds that Defendants would likewise be shielded by qualified immunity on Plaintiff's claims for false arrest, false imprisonment, and unlawful search, because the facts before the Court fail to make out a violation of a constitutional right.

The evidence before the Court establishes that Defendants responded to a 911 call directing them to Plaintiff's apartment, where he was involved in a domestic dispute with

his pregnant girlfriend and was essentially holding her hostage.  As further discussed above, these facts are established by the testimony of Officer Rivers and Officer Nostrant, the declaration by Ms. Emel-Warnica, the declaration of Officer Madigan, and the audio from the 911 and dispatch calls.  When Defendants arrived at Plaintiff's apartment, the door was open and the officers observed Plaintiff screaming at Ms. Emel-Warnica, blocking the doorway, and refusing to let her leave.  Plaintiff refused to comply with Defendants' directions, and Defendants entered the residence for safety reasons and to assist Ms. Emel-Warnica with leaving the apartment.  The Court finds that a reasonable officer was entitled to enter the residence under those circumstances, therefore barring Plaintiff's claim against Defendants for unlawful search.  *See, e.g., Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (police officers may enter a dwelling to render emergency aid and assistance to a person they reasonably believe to be in distress and in need of assistance); *see also Crespo v. City of N.Y.*, 781 F. Supp. 3d 125, 131 (E.D.N.Y. 2025) ("an ongoing domestic dispute can justify a warrantless entry").  Plaintiff's self-serving testimony that there was no domestic dispute on the night in question, and that the officers "busted" through his door for no reason, is not sufficient to defeat summary judgment on this issue and, as explained above, it is not supported by any evidence in the record and is in fact heavily contradicted by the evidence submitted by Defendants.

For the same reasons as articulated above in connection with the discussion of the evidence relevant to Plaintiff's battery claim, wherein Plaintiff argued that both his arrest and the force used during the arrest constituted a battery, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's claims for false arrest, false imprisonment,

- 28 -

and for battery/excessive use of force.  The evidence submitted by Defendants supports that Plaintiff was behaving in an out-of-control manner, and repeatedly refusing to comply with Defendants' instructions as they were assisting Ms. Emel-Warnica out of the apartment.  *See, e.g., Weiner v. McKeefery*, 90 F. Supp. 3d 17, 39 (E.D.N.Y. 2015) ("For the same reasons that the Court concludes that probable cause existed to arrest plaintiff, the Court also finds that [the officers], at the very least, had arguable probable cause to arrest plaintiff, especially since 'qualified immunity protects from personal liability under § 1983 officers who make reasonable judgment calls under the circumstances—particularly when, as here, the officer is put in the middle of a heated and potentially volatile familial dispute.'" (quoting *Carthew v. Cnty. of Suffolk,* 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010)).  As noted above, Plaintiff does not specifically dispute that he failed to comply with Defendants' instructions.  Accordingly, it was reasonable for Defendants to arrest Plaintiff.

Further, other than Plaintiff's self-serving statements that he did not resist arrest and that Defendants kicked and punched him, there is no evidence that Defendants used excessive force in effectuating Plaintiff's arrest.  Plaintiff does not dispute that he was not examined following his release.  There is one medical record from six months after Plaintiff's arrest, which reflects a superficial, healed cut on his left finger.  Further, Plaintiff has produced no supporting evidence for his contention that Defendants kicked and punched him—a fact Plaintiff does not dispute.  *See, e.g., Jenkins v. Town of Greenburgh*, No. 13-cv-8845, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (granting summary judgment on excessive force claim where the plaintiff's alleged thumb injury was not supported by any evidence, other than his deposition testimony); *see also Rolkiewicz v.*

*City of N.Y.*, 442 F. Supp. 3d 627, 642 (S.D.N.Y. 2020) (granting summary judgment to defendant on excessive force claim, where plaintiff "had every opportunity to present the Court with additional factual information or evidence in support of his excessive force allegations," but "the only evidence supportive of [the plaintiff's] injuries is his own testimony and complaint"). Under the circumstances, the record supports a conclusion that Defendants are entitled to qualified immunity.

### E.    Negligent Hiring, Training, and Supervision

Defendants argue that Plaintiff's negligent hiring, training, and supervision claims must be dismissed because the alleged acts were committed within the scope of employment. (Dkt. 32-12 at 24). In response, Plaintiff argues that it is "better for the jury to decide whether excessively beating Plaintiff was within [the Defendants'] 'scope of employment.'" (Dkt. 35 at 19).

Although neither party has raised the issue, as explained above, the Court previously dismissed the claims against the City and the LPD when it ruled on Defendants' motion to dismiss. (*See* Dkt. 25). Accordingly, it is unclear to the Court against whom Plaintiff's claim for negligent hiring, training, and supervision is being maintained, since Plaintiff asserted this claim against the City and the LPD, only. (*See* Dkt. 1-1 at 10). Accordingly, to the extent it was not clear from the Court's Decision and Order on Defendants' motion

- 30 -

for judgment on the pleadings, because the City and the LPD were dismissed from the action, Plaintiff's claims brought against those entities are also dismissed.[5]

### F.     Trespass Claim

Defendants lastly move for summary judgment on Plaintiff's trespass claim, arguing that law enforcement officials have the privilege to enter private property to perform their legal duties.   (Dkt. 32-12 at 25).   In response, Plaintiff argues that a police officer's privilege to enter property is dependent on the purpose for which he enters the property, and that it was unlawful for Defendants to enter Plaintiff's apartment.   (Dkt. 35 at 19-20).

As explained above, Officer Rivers and Officer Nostrant were dispatched to Plaintiff's apartment in response to a 911 call that Plaintiff's pregnant girlfriend was in distress and feared for her safety because Plaintiff would not allow her to leave his property. Upon arrival, Plaintiff was behaving erratically, not complying with Defendants' instructions, would not permit Ms. Emel-Warnica to leave, and then disappeared into a back room.   Defendants entered the property for safety reasons, including to ensure that Plaintiff was not going to obtain a weapon.   As discussed above, Plaintiff's contradictory and illogical version of events is insufficient to create a genuine issue of material fact. Plaintiff's claim that there was no domestic incident on the night in question, that he was

---

[5]      Even if Plaintiff had alleged a claim for negligent hiring, training, and supervision against Officer Rivers and Officer Nostrant, Plaintiff alleges in his complaint that "the torts committed by Defendants . . . were committed in the scope of [their] . . . employment." (Dkt. 1-1 at 11, ¶ 38).   *See, e.g.*, *Bradley v. City of Rochester,* No. 18-CV-6823-FPG, 2019 WL 3067281, at *1 (W.D.N.Y. July 12, 2019) (dismissing claim for negligent hiring, training, and supervision, where the plaintiff alleged that the officer was acting within the course of his employment when making an arrest).   Accordingly, Plaintiff's claim appears to be undercut by his own allegations.

not fighting with Ms. Emel-Warnica, and that Defendants simply "busted open" his door for no reason, is heavily contradicted by evidence in the record. For those reasons, Defendants are entitled to summary judgment on Plaintiff's trespass claim.

## **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment (Dkt. 32) is granted. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 4, 2026
            Rochester, New York

- 32 -